## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**JEFFREY D. MANN,** *et al.*,

      **Plaintiffs,**

                                      **Civil Action 2:18-cv-01565**
                                        **Judge George C. Smith**
    **v.**                                    **Chief Magistrate Judge Elizabeth P. Deavers**

**OHIO DEPARTMENT OF**
**REHABILITATION AND CORRECTIONS,** *et al.*,

      **Defendants.**

## REPORT AND RECOMMENDATION

Plaintiffs, state inmates who are proceeding without the assistance of counsel, bring this action under 42 U.S.C. § 1983. This matter is before the Court for consideration of Interested Party, the State of Ohio's Motion to Dismiss[1] (ECF No. 15), Defendants Ohio Department of Rehabilitation and Correction ("ODRC"), Andrew Eddy, David Hannah,[2] and Janice Douglas'

---

[1] Interested Party, State of Ohio filed its motion on behalf of Defendants Ohio Department of Rehabilitation and Correction, Andrew Eddy, Mona Parks, Gary Mohr, David Hannah, and Janice Douglas. (ECF No. 15, at pg. 1.) Defendant Gary Mohr was later terminated, and Defendant Annette Chambers-Smith added in his place. (ECF No. 24.) Both Defendant Annette Chambers-Smith and Defendant Mona Parks have filed their own Motions to Dismiss (ECF Nos. 35 & 43, respectively). Accordingly, the Undersigned declines to make a recommendation on the Interested Party, State of Ohio's Motion to Dismiss with respect to Defendants Annette Chambers-Smith and Defendant Mona Parks. To date, Defendant Annette Chambers-Smith and Defendant Mona Parks' Motions to Dismiss are not currently ripe for review. Therefore, when the instant Report and Recommendation refers to "Defendants," this does not include Defendant Annette Chambers-Smith or Defendant Mona Parks.

[2] Defendant David Hannah was later terminated. (ECF No. 24.) At the time of his termination, his successor in the role of Health Care Administrator at Grafton Correctional Institution had not been named or appointed, according to Plaintiffs. (*Id.*) When Defendant David Hannah was terminated, Defendant "Grafton Corr. Inst. Health Care Administrator" was added. (*Id.*)

(hereinafter, "Defendants") Motion to Dismiss (ECF No. 20), Plaintiffs' Response in Opposition[3] (ECF No. 25), and Defendants' Reply in Support (ECF No. 26). Interested Party, the State of Ohio did not file a Reply. For the following reasons, it is **RECOMMENDED** that Interested Party, the State of Ohio's Motion to Dismiss (ECF No. 15) and Defendants' Motion to Dismiss (ECF No. 20) be **GRANTED IN PART AND DENIED IN PART**.

Furthermore, the Undersigned also **RECOMMENDS** that Plaintiffs' Motion to Appoint Class Counsel (ECF No. 4) and Plaintiffs' Motion to Certify Claims as a Class Action (ECF No. 5) be **DENIED WITHOUT PREJUDICE**. Defendants have not responded to either Plaintiffs' Motion to Appoint Class Counsel (ECF No. 4) or Plaintiffs' Motion to Certify Claims as a Class Action (ECF No. 5). Accordingly, the Undersigned recommends that the proper course of action would be for Plaintiffs to re-file these two motions once the Court has finished its consideration of the remaining Motions to Dismiss (ECF Nos. 35 & 43). Any remaining Defendants, then, must file responses to Plaintiffs' motions regarding class counsel and certifying the claims as a class action, given the recent United States Court of Appeals for the Eighth Circuit ruling on an analogous matter. *See generally Postawko v. Missouri Dep't of Corr.*, 910 F.3d 1030 (8th Cir.

---

Because Defendant David Hannah was properly served (ECF No. 18), the Court construes Grafton Correctional Institutional Health Care Administrator as the proper party in interest over which service has been properly effected. (*See* ECF No. 27, at pg. 2.) Accordingly, where Interested Party, State of Ohio or the Defendants filing a Motion to Dismiss make an argument regarding Defendant David Hannah, the Court will construe it as an argument regarding Defendant Grafton Correctional Institution Health Care Administrator. Finally, the Court notes that Attorney Mindy Ann Worly, who is representing all other named defendants in this action has not made a notice of appearance on behalf of Defendant Grafton Correctional Institution Health Care Administrator. However, because the Court construes Grafton Correctional Institutional Health Care Administrator as the proper party in interest, the Court, at this juncture, presumes that the Motions to Dismiss at issue in the instant Report and Recommendation (ECF Nos. 15 & 20) apply to Defendant Grafton Correctional Institution Health Care Administrator.

[3] Plaintiff's Response in Opposition (ECF No. 25) is responsive to both Motions to Dismiss (ECF Nos. 15 & 20).

2018) (holding that district court did not abuse its discretion in granting a motion for class certification by prisoner plaintiffs alleging Eighth Amendment violations based on inadequate medical screening and care for Hepatitis C).

## I. BACKGROUND

Plaintiffs are inmates at Grafton Correctional Institution. Plaintiffs initiated this action by filing Motions for Leave to Proceed *in forma pauperis* on December 4, 2018. (ECF Nos. 1–3.) Also on December 4, 2018, Plaintiffs filed a Motion to Appoint Class Counsel (ECF No. 4) and a Motion to Certify Claims as a Class Action (ECF No. 5). On December 11, 2019, the Court granted Plaintiffs' Motions for Leave to Proceed *in forma pauperis* and filed their Complaint. (ECF No. 7.) Plaintiffs bring civil rights claims under 42 U.S.C. § 1983, asserting a violation of their Eighth Amendment rights based on deliberate indifference to serious medical needs relating to Hepatitis C. Plaintiffs allege the following regarding Hepatitis C and cite to exhibits attached to their Complaint:

> Hepatitis C is a viral [infection] that affects the liver in humans, causing cirrhosis, fibrosis, fatty liver, liver cancer and other dysfunctions of the liver; (Exhibit B, C & D)

> Hepatitis C Virus (HCV) is the tenth leading cause of death in the United States with 10% of all deaths in the U.S. being linked to it; (Exhibit J, CDC Report)

> Twenty thousand (20,000) people died of HCV in 2015, but the number could, in fact, be five times higher; (Exhibit E, CDC Report)

> The [prevalence] of chronic HCV infections among prisoners in the U.S. is between 12 and 35 percent (12-35%), compared to about 1.3% in the general population, and the prevalence of end stage liver disease caused by HCV is estimated to be three times higher in prisoners than in those in the general population; (Worman, Howard J. "Diagnosis and Treatment of Chronic Hepatitis C in [I]ncarcerated Patients", The AMA Journal of Ethics. Feb. 2008)

> HCV causes, inter alia, cirrhosis, which leads to fibrosis and interferes with liver function, (Exhibit A), fibrosis, which obliterates the architecture and function of the underlying organ or tissue, (Exhibit B), fatty liver, caused by the disruption of

fat metabolism caused by HCV and depositing excessive amounts of fat on the liver, interfering with liver function and leading to liver cancer, caused by fatty liver and genotype 3 HCV, and hepatocyte ballooning, which is necrosis (or dying off) of liver tissue as an inflammatory response to fatty liver and the effects of untreated HCV; (Exhibit [C & D])

In general, treatment of HCV will reverse the process of fatty liver if implemented at an early stage; (Exhibit C)

Treatment for HCV infection is indicated if the virus is present for six months; (Exhibits E and F)

Ninety percent (90%) of HCV infections can be cured with 8-12 weeks of therapy, (Exhibits E and F) and treatment is recommended at the earliest possible stage for maximum efficacy, (Exhibits G and I); and the only treatment is medications, (id);

The indicators for severity of infection are reflected as the "APRI" [ACT Serum to Platelet Ratio Index] which measures the viral load, in combination with determining the extent of [fibrosis], if any; (Exhibit H)

The use of a biopsy for assessment of the existence and extent of fibrosis has been established to be inaccurate, and is disfavored in favor of vibration-controlled transient liver elastography which measures the stiffness of the liver and any resultant cirrhosis or fibrosis;

Treatment is recommended for all patients with chronic HCV infection; (Exhibit I); (cf. Exhibit K)

. . .

The current prison population in Ohio is approximately 53,000 prisoners;

The low end estimate of 12% of prisoners with HCV calculated for Ohio's prison population equals six thousand, three hundred-sixty (6,360) prisoners with HCV, while the higher end estimate of 35% yields a figure of eighteen thousand, five hundred-fifty (18,550) prisoners with HCV in Ohio prisons;

The defendants herein are aware of the prevalence and seriousness of HCV infections among the prisoners in their collective charge, as shown not only by the fact that the defendants distribute informational pamphlets to prisoners freely at the medical departments, (see, e.g. Exhibits N, O, P and Q; provided in an open display for taking at the [Grafton Correctional Institution] medical department on October 20, 2018) but also by the promulgation of policies and protocols addressing testing, diagnosis and treatment for HCV in prisoners; (see, e.g. Exhibits L and M)[.]

(ECF No. 6, at pg. 4–6.)  Plaintiffs allege that they all have been diagnosed with HCV infections. (*Id.* at pg. 8.)  Specifically, Plaintiffs allege that Plaintiff Mann was told he would not be eligible for treatment until his APRI level reached 1.5, "even though it was acknowledged that an APRI of over 1.5 indicated the later stages of the [disease], with irreversible damage to the liver and its functions . . . with the stated reason for the delay being the costs[.]"  (*Id.* at pg. 6.)  Plaintiffs allege that Plaintiff Bragg was also denied treatment based on his APRI level.  (*Id.* at pg. 7.)  Finally, Plaintiffs allege that Plaintiff Pastrano has been continually denied treatment and is also denied periodic blood testing, which Plaintiffs allege is required by Ohio policies and protocols. (*Id.* at pg. 8.)

## II. STANDARD OF REVIEW

Defendants bring their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, alleging that Plaintiffs have failed to state a claim upon which relief can be granted.  To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a plaintiff must satisfy the basic federal pleading requirements set forth in Federal Rule of Civil Procedure 8(a).  Under Rule 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Thus, Rule 8(a) "imposes legal *and* factual demands on the authors of complaints."  *16630 Southfield Ltd., P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013) (emphasis in original).

Although this pleading standard does not require "'detailed factual allegations,' . . . [a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,'" is insufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  A complaint will not "suffice if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Instead, to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Flagstar Bank*, 727 F.3d at 504 (citations omitted).

In considering whether a complaint fails to state a claim upon which relief can be granted, the Court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Ohio Police & Fire Pension Fund v. Standard & Poor's Fin. Servs. LLC*, 700 F.3d 829, 835 (6th Cir. 2012) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Thus, while a court is to afford plaintiff every inference, the pleading must still contain facts sufficient to "provide a plausible basis for the claims in the complaint"; a recitation of facts intimating the "mere possibility of misconduct" will not suffice. *Flex Homes, Inc. v. Ritz–Craft Corp of Mich., Inc*., 491 F. App'x. 628, 632 (6th Cir. 2012); *Iqbal*, 556 U.S. at 679.

In addition, the Court holds *pro se* complaints "'to less stringent standards than formal pleadings drafted by lawyers.'" *Garrett v. Belmont Cnty. Sheriff's Dep't.*, No. 08-3978, 2010 WL 1252923, at *2 (6th Cir. April 1, 2010) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). This lenient treatment, however, has limits; "'courts should not have to guess at the

nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir.

2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

## III. ANALYSIS

As Plaintiffs point out, the two Motions to Dismiss at issue in the instant Report and

Recommendation are "virtually identical." (ECF No. 25, at pg. 1.) Accordingly, the

Undersigned will address both Motions to Dismiss simultaneously.

### A. Subject Matter Jurisdiction over the ODRC

Interested Party, State of Ohio and Defendants argue that Plaintiffs' claims against the

ODRC are barred by the Eleventh Amendment and 42 U.S.C. § 1983. (ECF No. 15, at pg. 4;

ECF No. 20, at pg. 3.) Plaintiffs respond that "they have included the ODRC as a nominal

defendant in this [c]ase because the plaintiffs herein are, in essence, suing the policies that are

being followed to deny them health care, as well as those who promulgate, interpret and apply

such policies." (ECF No. 25, at pg. 4.) Plaintiffs further respond that they "acknowledge the

arguments and authorities raised by the [D]efendants with regard to immunity of a state agency

and will leave it to the discretion of the Court, as to if the ODRC is a proper party to this

Action[.]" (*Id.*)

The Eleventh Amendment of the United States Constitution operates as a bar to federal-

court jurisdiction when a private citizen sues a state or its instrumentalities unless the state has

given express consent. *Pennhurst St. Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1983);

*Lawson v. Shelby Cnty.*, 211 F.3d 331, 334 (6th Cir. 2000). "It is well established that § 1983

does not abrogate the Eleventh Amendment." *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir.

2013) (citing *Quern v. Jordan*, 440 U.S. 332, 341 (1979)). ODRC is an instrumentality of the

state of Ohio. *Lowe v. Ohio Dep't of Rehab.*, No. 97-3971, 1998 WL 791817, at *2 (6th Cir.

Nov. 4, 2008). Because Ohio has not waived its sovereign immunity in federal court, it is entitled to Eleventh Amendment immunity from suit for monetary damages. *Mixon v. State of Ohio*, 193 F.3d 389, 397 (6th Cir. 1999). Further, ODRC is not a "person" who can be held liable under § 1983. *Diaz v. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013). Accordingly, the Undersigned recommends that Interested Party, State of Ohio and Defendants' Motions to Dismiss (ECF Nos. 15 & 20) be granted with respect to Defendant ODRC and that Defendant ODRC be terminated from the case.

### B. *Respondeat Superior*

Interested Party, State of Ohio and Defendants argue that Plaintiffs' claims against Defendants Andrew Eddy and David Hannah (now Defendant Grafton Corr. Inst. Health Care Administrator, hereinafter "GCIHCA" or "Defendant GCIHCA") must be dismissed because they fall under the doctrine of *respondeat superior*. (ECF No. 15, at pg. 5–6; ECF No. 20, at pg. 4–5.) In order to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citing *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 463 (6th Cir. 2006)). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted). Plaintiff must allege personal involvement because "§ 1983 liability cannot be imposed under a theory of *respondeat superior*." *Id.* (citation omitted). Thus, to hold a supervisor liable under § 1983, a plaintiff "must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct . . . ." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).

Interested Party, State of Ohio and Defendants argue that Plaintiffs' Complaint "lists no facts whatsoever suggesting that [Defendants Eddy and GCIHCA] actually participated in or encouraged any wrongful behavior depriving Plaintiffs of any right secured by either the Constitution or by federal law." (ECF No. 15, at pg. 5; ECF No. 20, at pg. 4.) They correctly argue that "supervisory personnel are not liable under the doctrine of *respondeat superior*; rather, [a] plaintiff must allege that a supervisor condoned, encouraged, or knowingly acquiesced in the alleged misconduct." *White v. County of Wayne*, 20 F. App'x 450, 451 (6th Cir. 2001) (citing *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 80–81 (6th Cir. 1995) (italics added).

Plaintiffs make the following allegations in their Complaint specifically regarding Defendant Eddy:

> Defendant Dr. Andrew Eddy is the Director of the ODRC "Collegial Review Committee" which operates to review recommended and prescribed medical care for Ohio prisoners to determine whether to authorize such prescribed medical care for the prisoners and who participates in the promulgation, interpretation and application of all ODRC Policies and Procedures related to providing medical care to Ohio prisoners, including, but not limited to each plaintiff and all others similarly situated thereto[.] (ECF No. 6, at pg. 3.)

> Defendant Dr. Andrew Eddy, as the Chair of the ODRC "Collegial Review Committee" has a direct role in interpreting and applying ODRC Medical Policies and Protocols, including those cited herein, and is directly and proximately responsible for the denial of adequate and timely readily available prescribed health care for Ohio Prisoners, including treatment for [Hepatitis C] for the Plaintiffs and all others similarly situated; moreover, this defendant has an established pattern of denying necessary medical care, in violation of the Eighth Amendment to the Constitution and in violation of the civil rights of the prisoners, thus establishing that the acts and conduct relating to the instant action are part of an ongoing pattern of conduct and are being committed deliberately, purposefully and with the intent to deprive prisoners of necessary health care and to violate their rights as set forth herein[.] (ECF No. 6, at pg. 9.)

(*See generally* ECF No. 6.)

Plaintiffs make the following allegations in their Complaint specifically regarding Defendant GCIHCA (formerly Defendant David Hannah):

Defendant David Hannah is the Health Care Administrator (HCA) at GCI, charged with oversight and implementation of health care for all prisoners at GCI including, but not limited to, each plaintiff and others similarly situated[.] (ECF No. 6, at pg. 4.)

Defendant David Hannah, as the Health Care Administrator for GCI, is charged with the supervision and oversight of all medical personnel and care at GCI for all GCI prisoners and is responsible and liable for any and/or all acts and conduct of said personnel and is directly and proximately responsible for the denial of adequate and timely readily available prescribed health care for GCI prisoners, including treatment for [Hepatitis C] for the Plaintiffs and others similarly situated at GCI[.] (ECF No. 6, at pg. 9.)

(*See generally* ECF No. 6.)

When indulging all reasonable inferences in favor of Plaintiffs and taking these well-pleaded facts as true, Plaintiffs' Complaint establishes that Defendants Eddy and GCIHCA at least implicitly authorized, approved, or knowingly acquiesced in providing medical care, or the lack thereof, to Plaintiffs. *See Love v. Franklin Cnty., Kentucky*, No. 3:18-cv-00023, 2019 WL 1387692, at *6 (E.D. Ky. March 27, 2019) (establishing that because defendant saw prisoner was in labor and chose not to intervene, the plaintiff had established defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."). For example, Defendant Hannah (now Defendant GCIHCA) wrote on a medical file for Plaintiff Bragg information about why he was not receiving Hepatitis C treatment at the present time and that he would continue to be followed up and lab work "done as ordered." (ECF No. 6, at pg. 185.) Furthermore, Plaintiffs allege that Defendants Eddy and GCIHCA play a role in the medical care for all prisoners at Grafton Correctional Institution. Accordingly, under the limited circumstances of this particular case, the Undersigned recommends that Interested Party, State of Ohio and Defendants' Motions to Dismiss (ECF Nos. 15 & 20) be denied on *respondeat superior* grounds.

### C. Medical Deliberate Indifference

Interested Party, State of Ohio and Defendants argue that Plaintiffs fail to state a claim under § 1983 because the facts Plaintiffs allege are insufficient to state a claim for medical deliberate indifference. (ECF No. 15, at pg. 6; ECF No. 20, at pg. 5.) 42 U.S.C. § 1983, provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress.

In order to proceed under § 1983, a plaintiff must prove both that (1) the perpetrator acted under color of state law; and (2) the conduct deprived the complainant of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981); *Brandon v. Allen*, 719 F.2d 151, 153 (6th Cir. 1983), *rev'd and remanded sub nom. Brandon v. Holt*, 469 U.S. 464 (1985). As a general rule, a plaintiff proceeding under § 1983 must allege that the deprivation of rights was intentional or at least the result of gross negligence. *Davidson v. Cannon*, 474 U.S. 344, 348 (1986). Mere negligence is not actionable under § 1983. *Chesney v. Hill*, 813 F.2d 754, 755 (6th Cir. 1987).

It is well established that "[t]he Eighth Amendment forbids prison officials from unnecessarily and wantonly inflicting pain on an inmate by acting with deliberate indifference toward [his or her] serious medical needs." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (internal quotations and citations omitted). A claim for deliberate indifference "has both objective and subjective components." *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011). The United States Court of Appeals for the Sixth Circuit has explained as follows:

> The objective component mandates a sufficiently serious medical need. [*Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir.2004).] The subjective component regards prison officials' state of mind. *Id.* Deliberate indifference "entails something more than mere negligence, but can be satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 895–96 (internal quotation marks and citations omitted). The prison official must "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 896 (internal quotation marks and citation omitted).

*Barnett v. Luttrell*, 414 F. App'x 784, 787–88 (6th Cir. 2011). Where the risk of serious harm is obvious, it can be inferred that the defendants had knowledge of the risk. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). The Sixth Circuit has also noted that in the context of deliberate indifference claims:

> [W]e distinguish between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment. Where a prisoner alleges only that the medical care he received was inadequate, federal courts are generally reluctant to second guess medical judgments. However, it is possible for medical treatment to be so woefully inadequate as to amount to no treatment at all.

*Alspaugh*, 643 F.3d at 169 (internal quotations and citations omitted). Along similar lines, "[o]rdinary medical malpractice does not satisfy the subjective component." *Grose v. Corr. Med. Servs, Inc.*, 400 F. App'x 986, 988 (6th Cir. 2010). Rather, the Sixth Circuit considers the subjective component to be satisfied where defendants recklessly disregard a substantial risk to a plaintiff's health. *Parsons v. Caruso*, 491 F. App'x 597, 603 (6th Cir. 2012). Furthermore, "a difference of opinion between [a prisoner] and the prison health care providers and a dispute over the adequacy of [a prisoner's] treatment . . . does not amount to an Eighth Amendment claim." *Apanovitch v. Wilkinson*, 32 F. App'x 704, 707 (6th Cir. 2002).

Plaintiffs must satisfy both the objective and subjective components to adequately state a claim for deliberate indifference. As explained above, the objective component mandates that a plaintiff demonstrate a "sufficiently serious" medical need, "which is one that has been

diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (internal citations omitted).

Here, Plaintiffs meet the objective component of a deliberate indifference claim. Accepting Plaintiffs' allegations as true, the Undersigned concludes that Plaintiffs meet the requirements of a sufficiently serious medical condition related to hepatitis C. *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 356 (6th Cir. 2006) ("[H]epatitis C likely constitutes a serious medical need sufficient to satisfy the objective component of our Eighth Amendment analysis[.]") (citing *Owens v. Hutchinson*, 79 F. App'x 159, 161 (6th Cir. 2003) ("[Plaintiff] has adequately alleged that he suffered from an objectively serious medical condition—hepatitis C virus.")). Furthermore, in Defendants' Reply, they concede that Hepatitis C "is a serious medical condition[,]" which therefore satisfies the objective component of a deliberate indifference claim.[4] (ECF No. 26, at pg. 4.)

The Undersigned now turns to the subjective component of a deliberate indifference claim. In order to demonstrate deliberate indifference to their medical needs, Plaintiffs must allege that each Defendant subjectively perceived a substantial risk of serious harm and disregarded that known risk in his treatment. *Blackmore*, 390 F.3d at 896. Because the Undersigned recommends dismissal of Defendant ODRC from the case as discussed above, only the allegations against Defendants Eddy, GCIHCA, and Douglas are addressed at this juncture.[5]

---

[4] The Court notes that the Defendants state they concede this point "[f]or the purposes of this Motion only[.]" (ECF No. 26, at pg. 4.)

[5] As previously explained, the instant Report and Recommendation does not address Defendants Chambers-Smith and Parks because these Defendants have filed their own Motions to Dismiss which are not yet ripe. (ECF Nos. 35 & 43, respectively).

In reviewing Plaintiffs' allegations, the Undersigned concludes that Plaintiffs sufficiently state a claim for medical deliberate indifference with respect to these Defendants at this stage of the litigation. The determination of supervisory liability in a claim of deliberate indifference is "generally one of fact, not law[,]" making it better suited for resolution at the summary judgment stage. *Estate of Reynolds v. City of Detroit*, No. 08-cv-14909, 2011 WL 6031937, at *4 (E.D. Mich. Dec. 5, 2011) (citing *Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980); *see also Reid v. Clarke*, No. 7:16-cv-00547, 2017 WL 706352, at *6 (4th Cir. Feb. 22, 2017) (denying defendants' motion to dismiss prisoner plaintiff's claims of deliberate indifference to his serious medical needs involving Hepatitis C).

Furthermore, multiple cases in federal court involve prisoner plaintiffs who allege deliberate indifference to their serious medical needs related to Hepatitis C. A review of these cases reveals that, while the law has evolved on the issue, the Undersigned concludes that dismissing Plaintiffs' deliberate indifference claims at the pleading stage would be improper.

In 2007, the United States District Court for the Northern District of Ohio held that a prisoner plaintiff did not present sufficient factual allegations from which the court could infer that defendants were deliberately indifferent to his serious medical need involving diagnosing and treating his Hepatitis C. *Dotson v. Wilkinson*, 477 F. Supp. 2d 838, 849 (N.D. Ohio March 12, 2007). Specifically, the court held that "where an inmate has received medical attention following a diagnosis of Hepatitis C, but has been unable to enter a treatment program due to objectively maintained exclusionary factors . . . no constitutional right has been violated." *Id.* at 850.

Earlier, in 2006, the United States Sixth Circuit Court of Appeals came to the same conclusion in another case involving a prisoner-plaintiff with Hepatitis C:

> The Complaint alleged only that the doctors prescribed a course of treatment other than that which [plaintiff] requested, opting to treat [plaintiff's] symptoms rather than the underlying disease. From these circumstances, [plaintiff] drew the conclusion that the doctors made a deliberate decision to "await[ ] Plaintiff's death by his liver shutting down[,]" a conclusion finding absolutely no support in the factual allegations of the Complaint. At most, [plaintiff's] factual allegations might support a claim for medical malpractice, which does not take on constitutional proportions simply because [plaintiff] is incarcerated. *See* [*Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)]; *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). In reality, his factual allegations established nothing more than a mere difference of opinion with the doctors' diagnoses and prescribed treatment. *See Thomas v. Coble*, 55 F. App'x 748, 749 (6th Cir. 2003) ("[Plaintiff] and Dr. Coble clearly disagreed over the preferred medication to treat [Plaintiff's] pain. However, this difference of opinion does not support an Eighth Amendment claim."). Either way, the Complaint failed to state a claim for deliberate indifference to [Plaintiff's] serious medical needs.

*Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 356–57 (6th Cir. 2006) (citations to the docket omitted). The Court in *Hix* also noted that

> numerous courts have acknowledged [that] [H]epatitis C does not require treatment in all cases. *See, e.g.*, *Johnson v. Wright*, 412 F.3d 398, 400 (2d Cir. 2005) ("New York State Department of Corrections [ ] policy generally forbids the prescription of [H]epatitis C medication to any prisoner with evidence of active substance abuse within the preceding two years."); *Iseley v. Dragovich*, 90 F. App'x 577, 581 (3d Cir. 2004) ("Interferon treatment was contraindicated in [plaintiff's] case because his condition had not yet progressed to the point where such treatment would have been appropriate."); *Edmonds v. Robbins*, 67 F. App'x 872, 873 (6th Cir. 2003) ("[T]he medical literature which [plaintiff] filed with the court also establishes that medication is not always required for the treatment of [H]epatitis C."). [Plaintiff] himself concedes this fact in his appellate brief. (*See* Appellant's Br. 5 (stating that "for most people, lifestyle changes, such as not drinking alcohol are sufficient")).

*Id.* at 357 n.1.

Dotson (2007) and *Hicks* (2006), however, are out of date in terms of medical information. In 2011, effective treatments for Hepatitis C were introduced, whereas before that time the available therapies "produced inconsistent results and severe side effects." *Cunningham v. Sessions*, No. 9:16-cv-1292, 2017 WL 2377838, at *1 (D. S.C. May 31, 2017) ("Since 2011, the FDA has approved [a] new generation of [direct acting antiviral ("DAA")] drugs which have

proven to be highly effective in the treatment and cure of Hepatitis C with minimal side effects."); *see also* Centers for Disease Control and Prevention, *Hepatitis C Questions and Answers for the Public*, https://www.cdc.gov/hepatitis/hcv/cfaq.htm#statistics (Nov. 2, 2018) ("Hepatitis C treatments have gotten much better in recent years."). Furthermore,

> [i]n response to the proven effectiveness of DAA drugs in curing Hepatitis C, two prominent professional associations of physicians specializing in the treatment of liver disease, the American Association for the Study of Liver Disease ("AASLD") and the Infectious Diseases Society of America ("IDSA"), issued new joint recommendations for the treatment of chronic Hepatitis C in June 2016. The joint recommendation recognized that the new DAA drugs provided a "virologic cure" for chronic Hepatitis C and recommended that DAA drugs be administered to "all patients with chronic [Hepatitis C] infection" except those with short life expectancies in which transplantation or other direct treatment was not available. It was also noted that delays in treatment of Hepatitis C with DAA drugs reduced the effectiveness of the drugs. These joint recommendations of the ASSLD and IDSA were subsequently endorsed by the CDC as an "evidence-based, expert-developed recommendations for [H]epatitis C management."

*Cunningham*, 2017 WL 2377838 at *1 (citations omitted). Accordingly, caselaw prior to medical developments in Hepatitis C treatment appears to be out of date with respect to the issue of whether a defendant ought to be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists. *See Blackmore*, 390 F.3d at 896 (finding that a defendant must be "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . ignore[] that risk," to have a sufficiently culpable state of mind for a deliberate indifference claim). Moreover, a prison official may act with deliberate indifference where his or her course of treatment is "medically unacceptable under the circumstances" or when it is chosen "in conscious disregard of an excess risk to [a prisoner's] health[.]" *Hunt v. Mohr*, No. 2:11-cv-00653, 2012 WL 1537294, at *4 (S.D. Ohio May 1, 2012) (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

Recent caselaw, indeed, suggests that the deliberate indifference claims of prisoner plaintiffs with Hepatitis C should survive the pleading stage. The court in *Cunningham* particularly noted the importance of medical advancements:

> In reaching the conclusion that Plaintiff has plausibly set forth a claim under the Eighth Amendment, the Court is mindful of the rapidly evolving medical and legal issues generated by the FDA's approval of a new generation of highly effective and curative DAA drugs, the recent pronouncements of professional organizations of liver specialists stating that treatment of essentially all patients with chronic Hepatitis C with DAA drugs is now the standard of care, and the endorsement of these new recommendations by the CDC. The Court is also aware of recent court decisions which have recognized the potential significance of these developments in addressing claims of state and federal inmates with chronic Hepatitis C who have been denied treatment with DAA drugs. *See Allah v. Thomas*, [679 F. App'x 216 (3d Cir. 2017)] (reversing district court's dismissal of state inmate's Eighth Amendment claim for refusal to provide treatment with DAA drugs); *Postawko v. Missouri Department of Corrections*, C.A. No. 2:16-4219-NKL, 2017 WL 1968317 (W.D. Mo. May 11, 2017) (denying defendants' motion to dismiss state inmate's Eighth Amendment claim for denial of DAA drugs for chronic Hepatitis C); *Bernier v. Trump*, C.A. No. 16-828 (APM), 2017 WL 1048053 (D.D.C. Mar. 17, 2017) (denying motion to dismiss BOP inmate's Eighth Amendment claim for denial of DAA drugs); *Henderson v. Tanner*, C.A. No. 15-804-SDD-EWD, 2017 WL 1015321 (M.D. La. Mar. 15, 2017), *adopting Report and Recommendation* 2017 WL 1017927 (Feb. 16, 2017) (denying motion to dismiss state inmate's Eighth Amendment claim for refusal to treat with DAA drugs); *Abu-Jamal v. Wetzel*, C.A. No. 3-16-2000, 2017 WL 34700 (M.D. Pa. Jan. 3, 2017) (granting preliminary injunctive relief to state prisoner with chronic Hepatitis C and directing prison officials to provide plaintiff DAA drug treatment).

2017 WL 2377838 at *5. Finally, the court in *Cunningham* the court found that plaintiff's allegation that defendants knowingly refused to provide him with curative treatment for his chronic Hepatitis C satisfied the subjective component of a deliberate indifference claim because if proven "it could show that the Defendants were aware that their actions created the substantial risk of serious harm, namely, that Plaintiff's chronic Hepatitis C infection could lead to cirrhosis, liver failure, liver cancer, and death."[6] *Id.* at *4. In the instant case, Plaintiffs' Complaint

---

[6] Even though the court in *Cunningham* found that the plaintiff's allegations were sufficient to survive a motion to dismiss concerning the claims for declaratory and injunctive relief, the

alleges that "the acts and conduct" of all Defendants "were committed purposely and/or knowingly, and with the intent to delay and/or deny access to medical care[.]" (ECF No. 6, at pg. 10.)

Not all courts have ruled in favor of a prisoner-plaintiff with Hepatitis C making claims of deliberate indifference. In 2018, the United States District Court for the District of Nevada was not persuaded by the plaintiff's argument that his AST/Platelet Ratio Index ("APRI") level should not have to be at a certain threshold before he received a specific treatment, as was the prison's policy. *Webb v. Aranas*, No. 3:17-cv-00427, 2018 WL 5849839, at *3 (D. Nevada Nov. 6, 2018). Plaintiff's make the same argument regarding their APRI level here. (ECF No. 6, at pg. 6 (alleging that Plaintiff Mann was told he would not be eligible for treatment until his APRI reached 1.5); pg. 7 (alleging that Plaintiff Bragg was told he would not be eligible for treatment unless his APRI exceeds 1.5).) The court in *Webb* reviewed cases that addressed arguments regarding plaintiffs' APRI score in the context of deliberate indifference claims:

> The courts to address APRI scores in the context of deliberate indifference claims based on non-treatment of [Hepatitis C] have nearly all ruled that there is no subjective indifference in the sense of the Eighth Amendment so long as whatever treatment guidelines an institution has established based on APRI scores are followed and a patient with [Hepatitis C] is at least further monitored. *Dawson v. Archambeau*, No. 16-cv-489, 2018 WL 1566833, at *2, 8, 11 & n.11 (D. Colo. Mar. 30, 2018); *Roy v. Lawson*, No. 2:17-cv-9, 2018 WL 1054198, at *3–4, 7

---

court granted the defendants' motion to dismiss on qualified immunity grounds, finding that "there is no clearly established statutory or constitutional right *at this time* for inmates with chronic Hepatitis C to be treated with DAA drugs." *Id.* at *4 (emphasis in original). Based on this, the United States District Court for the Southern District of West Virginia, which is also in the United States Court of Appeals for the Fourth Circuit like the *Cunningham* court, made a similar finding, holding that the defendants were entitled to qualified immunity on the plaintiff's claims for monetary damages against them arising out of the failure to treat plaintiff with DAA drugs for Hepatitis C. *Redden v. Ballard*, No. 2:17-cv-01549, 2018 WL 4327288, at *8 (S.D. W.Va. July 17, 2018) (Report & Recommendation adopted on September 10, 2018; Decision affirmed by the United States Court of Appeals for the Fourth Circuit because no timely objections to the Report and Recommendation were filed. *Redden v. Ballard*, 748 F. App'x 545, 546 (4th Cir. 2019)).

(S.D. Tex. Feb. 26, 2018); *Walton v. Person*, No. 1:16-cv-157, 2017 WL 2807326, at *5–6 (S.D. Ind. June 28, 2017); *Gordon v. Schilling*, No. 7:15-cv-95, 2016 WL 4768846, at *4, 6 & n.4 (W.D. Va. Sept. 13, 2016); *Melendez v. Fla. Dep't of Corr.*, No. 3:15-cv-450, 2016 WL 5539781, [at] *3, 6–7 (N.D. Fla. Aug. 30, 2016). *But see Postawko v. Mo. Dep't of Cor[r].*, No. 2:16-cv-4219, 2017 WL 1968317 (W.D. Mo. May 11, 2017).

2018 WL 5849839, at *3.

On the other hand, other courts have found that requiring a high APRI score before providing certain treatments to prisoners with HIV survives a motion to dismiss. The United States District Court for the Western District of Missouri held as follows in *Postawko v. Missouri Department of Corrections*:

> Plaintiffs' Complaint plausibly alleges that Defendants deliberately disregarded and continue to disregard Plaintiffs' serious medical need for DAA drug treatment. Defendants are aware of the availability and efficacy of DAA drugs. Defendants know that the applicable standard of care calls for treating *all* patients suffering from chronic [Hepatitis C] with those DAA drugs, regardless of their cirrhosis/fibrosis progression or APRI score, and that a delay in treatment with DAA drugs increases the risks of [Hepatitis C] progression as well as decreases the benefits of DAA treatment. However, despite this awareness, Defendants follow a policy or custom that categorically denies DAA drug treatment to inmates with chronic [Hepatitis C]. Under this policy, Defendants do not even *consider* treating inmates with chronic [Hepatitis C] with DAA drugs unless and until those inmates have APRI scores above 2.0 that persist for several months. Defendants follow this policy despite the following alleged facts: more than half of all people with cirrhosis will not have an APRI score of at least 2.0; APRI scores fluctuate from day to day, and an improvement in APRI score does not mean the condition has improved; an APRI score obtained from a blood draw is only one of several methods used to determine the progression of an individual's fibrosis/cirrhosis; and the standard of care is to treat an individual with chronic [Hepatitis C] with a DAA drug, regardless of his APRI score. As a result of this policy, Plaintiffs' Complaint further alleges that as of January 2015, the [Missouri Department of Corrections] reported that it was treating with DAA drugs only 0.11 percent of all of its [Hepatitis C]-positive inmates, which equates to approximately five inmates out of 4,736 inmates with known [Hepatitis C] infections.

> As alleged in Plaintiffs' Complaint, this "wait and see" policy of relying solely on APRI scores and delaying DAA treatment until the disease has progressed to a far more serious level contravenes the applicable medical standard of care without any medical justification. *See, e.g.*, *Abu-Jamal v. Wetzel*, 2017 WL 34700, at *15, quoting *Monmouth Cty. Corr. Ins. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir.

1987) ("Deliberate indifference is also evidenced where prison officials erect arbitrary and burdensome procedures that result in interminable delays and outright denials of medical care to suffering inmates."). Because chronic [Hepatitis C] is a progressive disease and delay in treatment with DAA drugs reduces the benefits associated with treatment, Defendant's policy causes unnecessary and wanton infliction of pain and increases the risk of serious damage to the health of those inmates suffering from chronic [Hepatitis C]. Taken as true, these facts plausibly allege a deliberate disregard for Plaintiffs' serious medical needs for DAA treatment in violation of the Eighth Amendment. *See, e.g.*, *Abu-Jamal v. Wetzel*, 2017 WL 34700, at *15 (M.D. Pa. Jan. 3, 2017) (finding reasonable likelihood of success on deliberate indifference prong where defendant prison followed policy of choosing a course of monitoring over DAA treatment for non-medical reasons and allowing the [Hepatitis C]-positive inmate's condition to worsen while his liver function and health continued to deteriorate before even considering treatment with DAA drugs); *Harrison v. Barkley*, 219 F.3d 132, 138 (2d Cir. 2000) (holding that both "outright refusal of any treatment for a degenerative condition that tends to cause acute infection and pain if left untreated" and the "imposition of a seriously unreasonable condition on such treatment" constitute deliberate indifference by prison officials).

Plaintiffs have plausibly alleged more than mere medical malpractice—an *inadvertent* failure to provide adequate medical care. For instance, their denied access to DAA treatment is not the result of a misdiagnosis; they have been properly diagnosed with chronic [Hepatitis C], for which the medical standard of care calls for DAA drug treatment. . . . Further, Defendants' decision to deny DAA treatment to Plaintiffs is not "based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady." *Harrison v. Barkley*, 291 F.3d 132, 139 (2d Cir. 2000). Plaintiffs' chronic [Hepatitis C] condition is a serious and harmful medical condition, which risks increasingly serious liver damage, among other bodily harms, to those who have it. Plaintiffs are not denied DAA treatment "based on an erroneous view that . . . treatment is as risky or painful or bad as the malady" because DAA drug treatment is reliable, safe, and highly effective with a 90 percent cure rate for those infected with [Hepatitis C]. *Id.* . . .

Defendants respond in part by asking the Court to take judicial notice of what they qualify as "indisputable facts," including that [Hepatitis C] is "typically an extremely slow-acting disease" and that "the large majority of [Hepatitis C]-positive persons will never suffer any serious adverse effects from the disease." [citation to docket omitted]. However, even if true, these facts do not justify as a matter of law Defendants' policy of categorically denying the proper treatment to inmates with chronic [Hepatitis C] by imposing an arbitrary condition on that treatment unsupported by medical justification. Defendants appear to suggest that because not *every* inmate infected with chronic-[Hepatitis C] will definitely suffer "serious adverse effects" from the disease, then treatment is not warranted. But, in contrast to Defendants' contention, Plaintiffs are not required to suffer "imminent,

life threatening circumstances" in order to allege deliberate indifference. *See, e.g., Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000) (denying qualified immunity for prison doctor who refused to treat cavity in one tooth unless inmate consented to extraction of another infected tooth, which was also diseased but which [the inmate] wished to keep) (characterizing the doctor's refusal of treatment as more than mere medical malpractice because he had "refuse[d] treatment of a properly diagnosed condition that was progressively degenerative, potentially dangerous and painful, and that could be treated easily and without risk"). Merely "opting for an easier and less efficacious treatment of the inmate's condition" by adopting a monitoring policy instead of treatment and waiting to see just how much the inmate's health may deteriorate is not permissible. *See, e.g., Abu-Jamal*, 2017 WL 34700, at *14 (rejecting prison's [Hepatitis C] fibrosis/cirrhosis monitoring and prioritization policy and stating that defendants "may not, with deliberate indifference to the serious medical needs of the inmate, opt for an easier and less efficacious treatment of the inmate's condition") (quoting *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)); *see also Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990) (quoting same).

Next, Defendants argue that Plaintiffs' Eighth Amendment claims must fail because Defendants do monitor and "treat" inmates with [Hepatitis C], as well as provide "clinical care." [citation to docket omitted]. However, as discussed above, Plaintiffs' Complaint plausibly alleges that the medical care they have received is inadequate: what Defendants have categorized as "medical care" is limited to a policy of monitoring through blood draws every six months in order to track Plaintiffs' APRI scores, as well as the provision of "minimal counseling" and classification of Plaintiffs as "Chronic Care Clinic Offenders." . . . Because Plaintiffs have plausibly alleged that the medical care they receive falls well below the applicable standard of care without any medical justification, they are "entitled to prove their case by establishing [the] course of treatment, or lack thereof, so deviated from professional standards that it amounted to deliberate indifference." [*Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)].

Furthermore, at least one district court has already considered and rejected as inadequate a similar monitoring policy for inmates with chronic [Hepatitis C], but in the context of an inmate plaintiff's motion for preliminary injunction. *Abu-Jamal v. Wetzel*, 2017 WL 34700, at *16 (M.D. Pa. Jan. 3, 2017). In *Abu-Jamal*, a district court in the Third Circuit granted the plaintiff inmate's motion for preliminary injunction to require the prison defendants to immediately treat his [Hepatitis C] with DAA drugs. *Id.* at *20. Similar to the case before this Court, the *Abu-Jamal* prison defendants followed a policy of barring from consideration for DAA treatment those inmates with chronic [Hepatitis C] who did not have severe fibrosis or cirrhosis. *Id.* at *15. Specifically, if an [Hepatitis C] positive inmate was considered for treatment, the prison would order shear wave elastography to determine the inmate's fibrosis progression. *Id.* If the test indicated a fibrosis level of F0, F1, or F2, the policy required the inmate to receive monitoring but did not permit treatment with DAAs. *Id.* Accordingly, inmates with mild or moderate

fibrosis had no chance of receiving DAA drugs until their [Hepatitis C] had worsened, which effectively meant that their [Hepatitis C] had to worsen before they would even be considered for treatment. *Id.*

The *Abu-Jamal* court found the plaintiff inmate had a reasonable likelihood for success on the merits as to his Eighth Amendment claim. *Id.* at *18. In analyzing the deliberate indifference prong, the district court characterized the prison's policy as suffering from a "fatal flaw": "refus[ing] without medical justification to provide treatment for certain inmates with hepatitis C and also impos[ing] an unreasonable condition—having vast fibrosis or cirrhosis—on treatment." *Id.* The district court further reasoned that this case was not a mere disagreement with the course of care, nor was it an inadvertent failure to provide adequate medical care. *Id.* Instead, the court concluded that the plaintiff "has shown that the [Department of Corrections] has implemented a policy that categorically denies certain inmates with chronic hepatitis C from receiving the curative treatment that the [Department of Correction's] own expert testified he would recommend for a non-prisoner with the same condition." *Id.* The court went on to conclude that the plaintiff had shown that the defendants deliberately denied providing treatment to inmates with a serious medical condition and choosing a course of monitoring instead "with the knowledge that (1) the standard of care is to administer DAA medications regardless of the disease's stage, (2) inmates would likely suffer from hepatitis C complications and disease progress without treatment, and (3) the delay in receiving DAA medications reduces their efficacy." *Id.*

Like in *Abu-Jamal*, the Plaintiffs in this case have alleged facts indicating that Defendants refuse to treat the vast majority of inmates suffering from chronic [Hepatitis C] and that they have imposed an unreasonable condition on qualification for treatment: advanced fibrosis/cirrhosis sufficient to indicate an APRI score of over 2.0 for several months. Despite an effective and near-certain cure in the form of DAA drugs, Defendants follow a prioritization and monitoring policy, which prolongs the suffering of those diagnosed with chronic [Hepatitis C] and allows the progression of the disease to accelerate. As in *Abu-Jamal*, such a policy is enough to show deliberate indifference, particularly at the current pleading stage.

. . .

Finally, the Court also rejects Defendants' separate argument that Plaintiffs fail to state a claim because they "do not allege the [Missouri Department of Corrections] Defendants are personally responsible for treating them or for managing their [Hepatitis C]" and thus, "fail to state any plausible claim of individual indifference to their [Hepatitis C]." [citation to docket omitted]. "Where a prisoner needs medical treatment prison officials are under a constitutional duty to see that it is furnished." *Crooks v. Nix*, 872 F.2d 800, 804 (8th Cir. 1989) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (2006)). In their Complaint, Plaintiffs allege that the Defendants who have moved to dismiss—the [Missouri Department of Corrections] and [Missouri Department of Corrections] Director Precythe—

implemented, authorized, or condoned the treatment policies described previously, which plausibly makes them liable despite the fact that these Defendants did not personally treat or manage Plaintiffs' [Hepatitis C]. *See id.* ("[A] § 1983 claimant may maintain a theory of direct liability against a prison or other official if that official fails to properly train, supervise, direct or control the actions of a subordinate who causes the injury."). Therefore, Plaintiffs' Complaint "sufficiently allege[s] inadequate prison policies or medical supervision which, if true, would result in these defendants being held liable just as if they had refused to deliver those services themselves." *Id.*

2017 WL 1968317 at *6–10 (footnotes omitted).

*Postawko* is analogous here. For instance, Plaintiffs allege that they have been refused treatment until their APRI reaches a score of 1.5. (ECF No. 6, at pg. 6 (alleging that Plaintiff Mann was told he would not be eligible for treatment until his APRI reached 1.5); pg. 7 (alleging that Plaintiff Bragg was told he would not be eligible for treatment unless his APRI exceeds 1.5)). In *Postawko*, the prison's policy was not to treat inmates with Hepatitis C until their APRI score reached 2.0. 2017 WL 1968317 at *6. Additionally, Plaintiffs in the instant case are not alleging that they have been misdiagnosed. Rather, like plaintiffs in the *Postawko* case, they are alleging that they have been categorically denied access to the proper treatment for their Hepatitis C. (*See* ECF No. 6, at pg. 6–8); 2017 WL 1968317 at *7.

Finally, the Missouri Department of Corrections had a policy of monitoring the *Postawko* plaintiffs, rather than treating them, which the court determined to be inadequate. 2017 WL 1968317 at *8. Plaintiffs in the instant action were also being monitored, rather than treated. (*See* ECF No. 6, at pg. 184 (prison communication to Plaintiff Mann that he had "no signs of advancing disease" and that he will "continued [sic] to be monitored"); *id.* at pg. 185 (prison communication to Plaintiff Bragg that the ODRC has a protocol in place for Hepatitis C treatment and that "to receive treatment [an] APRI score must be at least 1.5" but that he would "still receive evaluations and lab work as ordered by the Medical department"); *id.* at pg. 186

(prison communication to Plaintiff Pastrano that he was still being monitored for his Hepatitis C and was still under "chronic care")).

Although not all these cases is binding on this Court, they are persuasive and elucidate how the courts are developing law on the issue of whether prisoner-plaintiff can state a claim for deliberate indifference to his or her serious medical needs involving Hepatitis C. Because the varying and evolving caselaw, the Undersigned, at this juncture, finds that the most prudent course of action is to find that Plaintiffs' allegations are sufficient to state a claim for deliberate indifference under § 1983.[7] Accordingly, the Undersigned recommends that Interested Party, State of Ohio and Defendants' Motions to Dismiss (ECF Nos. 15 & 20) be denied as to Plaintiffs' claims for medical deliberate indifference.

## IV. CONCLUSION

For the reasons stated above, the Undersigned **RECOMMENDS** that Interested Party, the State of Ohio's Motion to Dismiss (ECF No. 15) and Defendants' Motion to Dismiss (ECF No. 20) be **GRANTED IN PART AND DENIED IN PART**. Specifically, the Undersigned **RECOMMENDS** that the Motions to Dismiss (ECF Nos. 15 & 20) be **GRANTED** with respect to Defendant ODRC, but **DENIED** on all other grounds. Furthermore, the Undersigned also **RECOMMENDS** that Plaintiffs' Motion to Appoint Class Counsel (ECF No. 4) and Plaintiffs' Motion to Certify Claims as a Class Action (ECF No. 5) be **DENIED WITHOUT PREJUDICE** so that Plaintiffs may re-file the two Motions once the Court has completed its consideration of the remaining Motions to Dismiss.

---

[7] The Undersigned makes no judgment at this juncture, however, as to the merits of Plaintiffs' claims.

## PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted)).

**Date: June 26, 2019**                          */s/ Elizabeth A. Preston Deavers*
                                                 **ELIZABETH A. PRESTON DEAVERS**
                                                 **CHIEF UNITED STATES MAGISTRATE JUDGE**